UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

CASE NO. 21-61341-CIV-ALTMAN/HUNT

VALERIE NACOLE HUNT,

    Plaintiff,

v.

KILOLO KIJAKAZI,
Acting Commissioner for Social Security,
    Defendant.
_____/

## **REPORT AND RECOMMENDATION**

THIS CAUSE is before this Court on the Parties' Cross Motions for Summary Judgment. ECF Nos. 15, 19. The Honorable Roy K. Altman, United States District Judge, referred this Matter to the undersigned United States Magistrate Judge for a Report and Recommendation. ECF No. 20; *see also* 28 U.S.C. § 636(b); S.D. Fla. L.R., Mag. R. 1. Upon thorough review of the Motions and the Responses thereto, the entire case file, the applicable law, and being otherwise fully advised in the premises, the undersigned respectfully RECOMMENDS that Plaintiff's Motion for Summary Judgment, ECF No. 15, be DENIED and that Defendant's Motion for Summary Judgment, ECF No. 19, be GRANTED.

## **BACKGROUND**

On February 11, 2019, Valerie Nacole Hunt ("Plaintiff") filed an application for a period of disability and Disability Insurance Benefits ("DIB") alleging disability beginning on June 19, 2015. ECF No. 15 at 142. The Social Security Administration ("SSA") denied

her claim at the initial and reconsideration levels. *Id.* at 211, 215. Hearings on Plaintiff's disability claim took place on May 21, 2020, January 26, 2021, and February 19, 2021. *Id.* at 216. An Administrative Law Judge ("ALJ") issued an unfavorable decision denying Plaintiff's claim. *Id.* at 43. The Appeals Council denied Plaintiff's request for review of the ALJ's unfavorable decision. *Id.* at 9. Plaintiff now seeks judicial review of the ALJ's decision.

## Social Security Framework

To determine whether a claimant is disabled, the Social Security Regulations outline a five-step process:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a residual functioning capacity ("RFC") assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's RFC, age, education, and work experience.

*Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011).

Here, at step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since June 19, 2015. ECF No. 13 at 26. At step two, the ALJ found that Plaintiff had the following combination of severe impairments: discoid lupus erythematosus; systemic lupus erythematosus; myalgia; myositis; fibromyalgia; lumbago; bilateral sciatica; tobacco use disorder; obstructive sleep apnea; obesity; and unspecified depressive disorder with secondary anxiety. *Id.* At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. § 404. *Id.* at 27. After

careful consideration of the entire record, at step four, the ALJ found that Plaintiff has the residual functional capacity to lift and/or carry 20 pounds occasionally and 10 pounds frequently; stand and/or walk 6 hours total in an 8-hour workday, sit 6 hours total in an 8-hour workday; frequently reach, handle, finger, and feel with the bilateral upper extremities; occasionally climb ramps and stairs, stoop, kneel, crouch, and crawl, and never climb ladders, ropes, and scaffolds.  The ALJ further found that Plaintiff can work around moving machinery and unprotected heights; can occasionally interact with the public, co-workers, and supervisors; is able to concentrate and persist for simple, routine tasks for two-hour segments without fast paced, high production demands; and is able to adapt to gradual or infrequent changes in the work setting.  *Id.* at 31-32.  The ALJ found that Plaintiff was unable to perform any past relevant work.  *Id.* at 41.  However, the ALJ determined that, given the Plaintiff's age (36), education (at least a high school education), work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform.  *Id.*  As a result, the ALJ found that Plaintiff was not disabled.  *Id.* at 42.

## STANDARD OF REVIEW

Judicial review of the ALJ's decision in a disability case is "limited to an inquiry into whether there is substantial evidence to support the findings of the [ALJ], and whether the correct legal standards were applied." *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002) (citing 42 U.S.C. § 405(g)).  Whether the ALJ applied the correct legal standards is a question of law, which this Court reviews de novo. *Graham v. Bowen*, 790 F.2d 1572, 1575 (11th Cir. 1986) (citing *Wiggins v. Schweiker*, 679 F.2d 1387, 1389 (11th Cir. 1982)).  "Substantial evidence is more than a scintilla and is such relevant evidence

as a reasonable person would accept as adequate to support a conclusion." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997)). In determining whether substantial evidence exists, the court must scrutinize the record in its entirety, "taking into account evidence favorable as well as unfavorable to the decision." *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995). However, the court may not reweigh the evidence or substitute its judgment for that of the ALJ. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (citing *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004)). Even if the evidence preponderates against the ALJ's decision, the reviewing court must affirm if the decision applies the correct legal standard and is supported by substantial evidence. *See Crawford*, 363 F.3d at 1158–59.

## ANALYSIS

Plaintiff makes three arguments in support of her request to reverse the ALJ's decision and remand this case for further proceedings. First, Plaintiff argues that the ALJ failed to properly consider the combined effect of the impairments on Plaintiff's RFC. Plaintiff also alleges that the ALJ found Plaintiff's obesity and sleep apnea to be severe impairments but failed to identify the limitations due to these impairments and failed to address the opinion of Dr. Savage, an impartial medical expert, concerning the functional impact of these impairments. Second, Plaintiff argues that the ALJ's decision was unsupported by substantial evidence because she failed to pose a complete hypothetical question to the vocational expert ("VE") and failed to include limitations suggest by Dr. Ben-Ezra, the consultative examiner, in determining Plaintiff's RFC. Third, Plaintiff argues that the ALJ and the Appeals Council did not have constitutional authority to

decide the present case because they were delegated authority by former Commissioner of Social Security Andrew Saul, who was appointed through a constitutionally invalid structure identical to one which the U.S. Supreme Court found to be unconstitutional in *Seila Law LLC v. Consumer Financial Protection Bureau*, 140 S. Ct. 2183 (2020).

      I.      <u>Plaintiff's Obesity and Sleep Apnea</u>

Plaintiff asserts that the ALJ's RFC assessment does not discuss how Plaintiff's fatigue—caused by obesity, sleep apnea, and lupus—affects her RFC even though the ALJ found that Plaintiff's impairments—obesity, sleep apnea, and lupus—were not only medically determinable but also severe. Plaintiff contends that the ALJ determined that Plaintiff's obesity, sleep apnea, and lupus were severe impairments. As a result, Plaintiff alleges that, by definition, the ALJ found that the impairments significantly impact Plaintiff's ability to work. Plaintiff contends that rather than explain how Plaintiff's fatigue affects her RFC, the ALJ instead focused on objective findings concerning muscle strength, range of motion, and gait.

Next, Plaintiff argues that the ALJ failed to properly consider the medical opinion of Dr. Savage, the impartial medical expert, who opined as to the functional limitations of Plaintiff's impairments. Plaintiff claims that the ALJ rejected Dr. Savage's opinion on the grounds that the record generally showed that Plaintiff's gait was normal, and her motor strength was 5/5. Plaintiff alleges that this approach is inappropriate because Dr. Savage's opinion did not cite any gait issues or reduced muscle strength to support his limitation on Plaintiff's ability to do sedentary work. Instead, Plaintiff claims that Dr. Savage's opinion explained that the limitation on Plaintiff's ability to do sedentary work was due to a combination of muscular pain and fatigue. As a result, Plaintiff argues that

5

the ALJ's failure to properly address Dr. Savage's opinion and the impact of Plaintiff's fatigue on her RFC warrants remand.

The Commissioner responds that substantial evidence supports the ALJ's RFC assessment. The Commissioner argues that the ALJ properly considered the functional effects of Plaintiff's obesity, sleep apnea, and lupus when determining Plaintiff's RFC. The Commissioner contends that the ALJ specifically addressed Social Security Rulings ("SSR") 19-2p and noted that Plaintiff had a body mass index of 43.5 during the relevant period. When the effects of Plaintiff's obesity were considered, the ALJ found that Plaintiff's orthopedic impairments may be characterized as more limiting and could preclude performance of anything more than light physical exertion. However, the ALJ noted that that nothing in the record would limit Plaintiff to less than light physical exertion, which the Commissioner argues satisfies the requirements of SSR-19-2p. The Commissioner further argues that the objective evidence, treatment notes, and medical opinions provide sufficient evidence such that a reasonable mind would conclude that Plaintiff had the RFC to perform light work during the relevant period.

Before reaching steps four and five of the sequential analysis, the ALJ must determine a claimant's RFC. 20 C.F.R. § 404.1520(a)(4)(iv). The RFC must consider all of the medical evidence in the record, and must reflect all of the claimant's physical, mental, and environmental restrictions. 20 C.F.R. § 404.1545(a)(1) and (3). In rendering the RFC, the ALJ must consider the medical opinions in conjunction with all of the other evidence of record and must consider all of the medically determinable impairments, including impairments that are not severe, and the total limiting effects of each. 20 C.F.R. §§ 404.1520(e), 404.1545(a)(2) & (e).

The burden rests on the plaintiff to prove that an impairment is severe and that this impairment caused additional limitations on his ability to work. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). Thus, the heart of the issue on appeal is not whether plaintiff's allegations are supported by some evidence but whether the ALJ's findings are supported by substantial evidence. *See Dyer*, 395 F.3d at 1210; *Ellison v. Barnhart*, 355 F.3d 1272, 1275 (11th Cir. 2003); *see also Werner v. Comm'r of Soc. Sec.*, 421 F. App'x 935, 939 (11th Cir. 2011) ("The question is not . . . whether the ALJ could have reasonably credited [claimant's] testimony, but whether the ALJ was clearly wrong to discredit it."). In other words, Plaintiff cannot merely identify evidence that supports her position but must show the absence of substantial evidence supporting the ALJ's conclusion. *See Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991); *Sims v. Comm'r of Soc. Sec.*, 706 F. App'x 595, 604 (11th Cir. 2017).

"An ALJ must consider obesity when assessing a claimant's overall medical condition." *Silas v. Saul,* No. 8:18-cv-477-TSPF, 2019 WL 4686802, at *7 (M.D. Fla. Sept. 26, 2019). "Obesity shall be considered when determining if (1) a claimant has a medically determinable impairment, (2) the impairment is severe, (3) the impairment meets or equals the requirements of a listed impairment, and (4) the impairment bars claimant 'from doing past relevant work and other work that exists in significant numbers in the national economy.'" *Lewis v. Comm'r of Soc. Sec.*, 487 F. App'x 481, 483 (11th Cir. 2012) (citing SSR 02–1p). When obesity is identified as a medically determinable impairment, the ALJ must "assess the RFC to show the effect obesity has upon the person's ability to perform routine movement and necessary physical activity within the work environment." SSR 19-2p.

7

The undersigned has reviewed the record and finds that the ALJ properly considered Plaintiff's fatigue caused by obesity, sleep apnea, and lupus. At step three, the ALJ determined that Plaintiff had a combination of severe impairments including obesity, sleep apnea, and lupus. However, the ALJ found that the impairments considered singly or in combination did not cause Plaintiff more than a mild limitation in her activities of daily living and were therefore considered as non-severe. Further, the ALJ noted that Plaintiff's examination by her primary healthcare provider showed generally unremarkable examinations including cardiovascular findings. As to obesity, the ALJ found that Plaintiff's orthopedic impairments, compounded by obesity, might cause more limitation and could preclude the performance of more than light physical exertion. However, the ALJ concluded that nothing in the record, including the orthopedic impairments compounded by significant obesity, would limit her to less than light physical exertion.

Further, Plaintiff mischaracterizes the ALJ's consideration of Dr. Savage's opinion. Dr. Savage opined that Plaintiff could lift and carry up to 10 pounds frequently; could sit for seven hours at one time and stand or walk for three hours at a time; experienced morning fatigue; and would benefit from sedentary work level because of the "variations Plaintiff experiences due to myalgia, etc." ECF No. 13 at 34. Dr. Savage found that Plaintiff did not have any impairments that met any of the listings. The ALJ included Dr. Savage's opinion but found Plaintiff to be slightly less limited than Dr. Savage opined. Nevertheless, a majority of Dr. Savage's opinion comports with the findings in the ALJ's RFC assessment. The undersigned finds that the ALJ's consideration of Plaintiff's obesity

satisfies the requirements of SSR 19-2p and her findings as to Plaintiff's fatigue caused by obesity, sleep apnea, and lupus are supported by substantial evidence.

    II.    <u>There is no Apparent Conflict Between the DOT Definition for Reasoning Level Two Jobs and Simple Routine Tasks</u>

Plaintiff next argues that the ALJ accepted Dr. Ben-Ezra's, the consultative examiner, opinions because of her inclusion of the limitation to do simple tasks; however, Plaintiff claims that the ALJ failed to impose any limitations on detailed tasks. Further, Plaintiff argues that Plaintiff would not be able to perform two of the jobs identified by the VE as appropriate for someone with her RFC. Plaintiff contends that the ALJ should have included the limitation on the ability to perform detailed tasks in the RFC assessment and in the hypothetical question to the VE or should have explained with particularity why the ALJ did not include this limitation in the RFC assessment. Thus, Plaintiff argues that the ALJ's decision is not supported by substantial evidence because she failed to pose a complete hypothetical question to the VE.

The Commissioner responds that Plaintiff is conflating Dr. Ben-Ezra's use of the word detailed with the Dictionary of Occupational Titles' ("DOT") definition of reasoning level two jobs, which includes a limitation in carrying out "detailed but uninvolved written or oral instructions." ECF No. 20 at 15. The Commissioner argues that there is no evidence that Dr. Ben-Ezra was aware of the DOT's definition or that she intended to preclude Plaintiff from performing work that requires following detailed but uninvolved instructions. The Commissioner further argues that there is no inconsistency between jobs involving simple instructions and reasoning level two jobs because "detailed" as used in the DOT's definition of reasoning level two jobs relates to the length of the instructions, not the complexity. The Commissioner contends that even if Plaintiff is excluded from

9

performing reasoning level two jobs, her argument fails because the VE also identified reasoning level one jobs that represented a total of 211,000 jobs nationally, which alone constitutes a significant number of jobs.  Thus, the Commissioner contends that including the reasoning level two jobs, if it was erroneous, was harmless and that substantial evidence supports the ALJ's decision.

At step five in the sequential analysis, the SSA must show the existence of other jobs in the national economy that the claimant can perform.  *Washington v. Commissioner of Soc. Sec.*, 906 F.3d 1353, 1359 (11th Cir. 2018).  Thus, the ALJ must determine, "in light of the [DOT] and [VE's] testimony, whether jobs exist in the national economy in significant numbers that the claimant could perform in spite of his impairments.'" *Buckwalter v. Acting Commissioner of Soc. Sec.*, 5 F.4th 1315, 1321 (11th Cir. 2021) (quoting *Washington*, 906 F.3d at 1360).  When the VE provides testimony about a job's requirements, the ALJ must inquire about any possible conflict between that testimony and the information provided in the DOT.  *Id.*  The ALJ must resolve any conflict before relying on the VE's testimony to support a determination that a claimant is or is not disabled.  *Id.*

In *Washington*, the Eleventh Circuit held that SSR 00-4P imposes upon ALJs an affirmative duty to identify apparent conflicts and resolve them.  906 F.3d at 1362.  This duty is "not fulfilled simply by taking the VE at his word that his testimony comports with the DOT when the record reveals an *apparent conflict* between the VE's testimony and the DOT."  *Id.* (emphasis added).  The ALJ's decision is not supported by substantial evidence if the ALJ fails to properly discharge this duty.  *Id.*

> Specifically, the ALJ must:
>
> (1) identify any "apparent" conflicts, regardless of whether that conflict is brought to the ALJ's attention by the parties or the VE; (2) explain any discrepancy between the VE's testimony and the DOT; and (3) detail in the decision how that discrepancy was resolved. A conflict is apparent if it is "apparent to an ALJ who has ready access to and a close familiarity with the DOT."  If the "conflict is reasonably ascertainable or evident," the ALJ must identify it. Apparent means "seeming real or true, but not necessarily so."

*Buckwalter*, 5 F.4th at 1321 (citing *Washington*, 906 F.3d at 1366) (internal citations omitted).

In *Washington*, the claimant suffered nerve damage from his diabetes, numbness in his extremities, and diminished visual activity.  906 F.3d at 1356.  The VE identified two jobs that the DOT described as involving "frequent" fine manipulation in response to a question by the ALJ that asked the VE whether jobs existed in the national economy for someone who could only engage in "occasional" fine manipulation.  *Id.*  The Eleventh Circuit found that this conflict between occasional and frequent manipulation was apparent and manifest from even a cursory side-by-side comparison of the VE's testimony and the DOT.  Thus, the court found the ALJ breached his duty by not resolving the apparent conflict.  *Id.*

Likewise, in *Viverette v. Commissioner of Social Security*, the Eleventh Circuit found that there is an apparent conflict between an RFC limitation to simple, routine, and repetitive task and jobs that require level three reasoning, "which require the ability to apply commonsense understanding furnished in written, oral, or diagrammatical form and to deal with problems involving several concrete variables in or from standardized situations."  13 F.4th 1309, 1316 (11th Cir. 2021); *see also Keller v. Berryhill*, 754 Fed.

11

App'x 193, 197–98 (4th Cir. 2018) ("A limitation to short and simple instructions appears more consistent with Reasoning Development Level 1 or Level 2 than with Level 3.").

However, in *Buckwalter*, the ALJ, relying on the VE's testimony, determined that the claimant could perform three unskilled positions, each with a DOT reasoning level of two. 5 F.4th at 1321. The VE stated that her testimony about claimant's potential jobs was consistent with the DOT; however, claimant asserted that her RFC only allowed her to carry out and remember simple instructions, which conflicted with DOT level reasoning level two. *Id.* at 1323. The Eleventh Circuit held that there was no apparent conflict between the claimant's RFC, which limited her to the ability to "understand, carry-out, and remember simple instructions," and the identified positions with a reasoning level of two. *Id.* The Court went on to explain that the primary difference between reasoning levels one and two is the length of the instructions, not the complexity. *Id.* (explaining that "level one specifies that the instructions must be 'simple,' level two similarly specifies that they must be 'uninvolved'"). The Court elaborated that "Merriam-Webster defines 'simple' as 'readily understood or performed;' it defines 'uninvolved' as 'not involved,' meaning not 'marked by extreme and often needless or excessive complexity.'" *Id.* (internal citations omitted). Therefore, the Court found that there was no apparent conflict between the VE's testimony and the DOT and affirmed the ALJ's decision as to that issue. *Id.* at 1324.

Here, the undersigned finds that the situation before the Court is more akin to *Buckwalter* than *Washington* or *Viverette*. Dr. Ben-Ezra opined that Plaintiff, "at the very least," could recall and implement directions to complete simple and repetitive tasks. ECF No. 13 at 38. Dr. Ben-Ezra further opined that Plaintiff could experience difficulty learning and recalling directions for complicated, detailed tasks. The ALJ found Dr. Ben-Ezra's

12

opinion to be persuasive because it was consistent with the medical evidence of record but found the limitation in Dr. Wiese's, another consultative examiner, opinion as to occasional interactions to be more suitable. The VE concluded that Plaintiff, with her RFC for work that required light exertion, could not perform her past work as a fast-food shift manager or a real estate clerk. However, the VE stated that there was other work in the National Economy Plaintiff could perform. Specifically, the VE identified three positions: housekeeper (221,000 positions nationally), routing clerk (100,000 positions nationally), and office helper (105,000 positions nationally).

Plaintiff seems to argue that the ALJ's decision is not supported by substantial evidence because the ALJ failed to resolve the apparent conflict between Dr. Ben-Ezra's opinion that Plaintiff would have difficulty with "complicated, detailed tasks" and the reasoning level two jobs the VE stated that Plaintiff could perform (routing clerk and office helper). The undersigned disagrees. As previously mentioned, a position with a reasoning level of two requires the ability to carry out detailed but uninvolved instructions. The Eleventh Circuit has stated that the primary difference between levels one and two is the length of the instructions, not the complexity. The Merriam-Webster definition of uninvolved is not involved, "meaning not 'marked by extreme and often needless or excessive complexity.'" *Buckwalter*, 5 F.4th at 1323. The undersigned finds that Dr. Ben-Ezra's opinion conforms to this language because the doctor opined that Plaintiff would have difficulty with "*complicated*, detailed tasks." Again, level two reasoning requires the ability to perform uninvolved tasks, which not only comports with the VE's testimony but also Dr. Ben-Ezra's opinion. Further, as the Eleventh Circuit stated, there is no apparent conflict between reasoning level two and a claimants' ability to perform simple routine

13

tasks. Thus, in accordance with the Eleventh Circuit's decisions, the undersigned finds that there was no apparent conflict and therefore the ALJ did not have an affirmative duty to resolve the alleged conflict between the VE's testimony and DOT's definition for reasoning level two jobs. Therefore, the undersigned finds that the ALJ's decision is supported by substantial evidence.

### III. Separation of Powers

Finally, Plaintiff argues that on the date of her unfavorable decision there was no validly appointed Commissioner of Social Security, as the agency's removal provision, 42 U.S.C. § 902(a)(3) ("removal provision"), violates the Constitution's separation of powers framework. As a result, Plaintiff asserts the delegation of authority from then-Commissioner Andrew Saul to the ALJ is constitutionally defective. Thus, as there was no properly appointed Commissioner and the delegation of authority was constitutionally defective, Plaintiff alleges that she was deprived of a valid adjudicatory process.

The Commissioner responds that the Parties agree that the removal provision violates separation of powers to the extent it is construed as limiting the President's authority to remove the Commissioner without cause. But the Commissioner argues that this fact alone without more does not support setting aside an unfavorable SSA disability benefits determination. The Commissioner argues that the ALJ who rendered the decision was not appointed by a commissioner subject to the removal restriction. Rather, the Commissioner states that the ALJ who rendered the unfavorable decision had his appointment ratified by the Acting Commissioner of Social Security. Next, the Commissioner argues that even if the deciding ALJ had been appointed by a tenure-

protected Commissioner, Plaintiff cannot establish a nexus between the purported harm and the removal restriction.

Plaintiff's claim relates to the Supreme Court's decision in *Seila Law LLC v. Consumer Financial Protection Bureau*, 140 S. Ct. 2183 (2020). In *Seila Law*, the Supreme Court found that the removal statute governing the Consumer Financial Protection Bureau ("CFPB") violated separation of powers principles because it prevented the President from removing the CFPB Director without cause. *Id.* at 2197. Similarly, In *Collins v. Yellin*, 141 S. Ct. 1761 (2021), the Supreme Court considered a challenge to a provision restricting the removal of the director of the Federal Housing Finance Agency ("FHFA") that once again prevented the President from removing the agency's director without cause. However, to obtain retrospective relief, the Supreme Court held that a plaintiff must show that "an unconstitutional provision . . . inflict[ed] compensable harm." *Collins*, 141 S. Ct. at 1788–89, 1788 n.24 (stating that *Seila's* holding does not mean that "actions taken by such an officer are void *ab initio* and must be undone").

Plaintiff's argument is essentially that the ALJ's decision is void due to the unconstitutional nature of the agency's removal provision. In opposition, the Commissioner raises several arguments, chief among them: Plaintiff has failed to show that the removal provision inflicted any harm. Plaintiff asserts that she has suffered the following injuries:

1. Plaintiff did not receive a constitutionally valid hearing and adjudication from an ALJ to which Plaintiff was entitled.
2. Plaintiff did not receive a constitutionally valid decision from an ALJ to which Plaintiff was entitled.
3. Plaintiff received an unfavorable decision from this constitutionally illicit ALJ adjudication process.
4. Plaintiff did not receive a constitutionally valid process from the SSA's Appeals Council to which Plaintiff was entitled.

> 5. Plaintiff did not receive a constitutionally valid determination by the Appeals Council to which Plaintiff was entitled.

In *Vickery v. Commissioner of Social Security,* the plaintiff alleged that she did not receive a constitutionally valid hearing, adjudication, and decision because the ALJ who rendered her decision did not have a proper delegation of power because the Commissioner's statutory tenure protection violated separation of powers principles. No. 5:21-cv-122-PRL, 2022 WL 252464, at *3 (M.D. Fla. Jan. 27, 2022). The court denied the plaintiff's constitutional claim on the grounds that plaintiff's purported injuries were conclusory; plaintiff set forth no facts showing plausible harm as a result of the Commissioner's statutory protections; and, thus, plaintiff could not demonstrate that the provision itself "inflict[ed] compensable harm." *Id.*

Similarly, here, the undersigned finds that Plaintiff has not identified how the removal provision at issue caused her compensable harm. Like the plaintiff in *Vickery*, Plaintiff's alleged injuries are nothing more than conclusory allegations. In fact, Plaintiff's alleged injuries are identical to those raised by the plaintiff in *Vickery*. However, Plaintiff has not set forth any facts, other than these conclusory allegations, that show any connection between the removal provision and any possible harm to Plaintiff. Further straining the nexus between the removal provision and any compensable harm to Plaintiff is the fact that the ALJ who rendered the decision held office under an appointment legally ratified by an Acting-Comissioner, who was not subject to the removal provision's protection. *See Helms v. Comm'r of Soc. Sec.*, No. 3:20-CV-589-MOC, 2021 WL 5710096, at * 3 (W.D.N.C. Dec. 1, 2021) (holding that even if the plaintiff were somehow injured by the ALJ's decision, the ratification of the ALJ's appointment by Acting

Commissioner Berryhill "adequately cured any such injury," since the Acting Commissioner was not protected from removal from office).

Although the Supreme Court in *Collins* did not directly address the issue raised herein, Justice Kagan foreshadowed its outcome:

> [T]he majority's approach should help protect agency decisions that would never have risen to the President's notice. Consider the hundreds of thousands of decisions that the [SSA] makes each year. The SSA has a single head with for-cause removal protection; so a betting person might wager that the agency's removal provision is next on the chopping block ... [b]ut given the majority's remedial analysis, I doubt the mass of SSA decisions—which would not concern the President at all—would need to be undone. That makes sense.... When an agency decision would not capture a President's attention, his removal authority could not make a difference—and so no injunction should issue.

*Collins*, 141 S. Ct. at 1802 (Kagan, J., concurring). Justice Kagan's reasoning, as well as other decisions from other districts within this Circuit, support the undersigned's conclusion that there is no evidence in the instant action to support a nexus between the removal provision and any compensable harm to Plaintiff. *Id.*; *see also Tibettes v. Comm'r of Soc. Sec.*, No. 2:20-cv-872-SPC-MRM, 2021 WL 6297530, at *3 (M.D. Fla. Dec. 21, 2021); *Vickery*, 2022 WL 252464, at *4; *Perez-Kocher v. Comm'r of Soc. Sec.*, No. 6:20-cv-2357-GKS-EJK, 2021 WL 6334838, at *4–5 (M.D. Fla. Nov. 23, 2021); *Helms,* 2021 WL 5710096, at * 3*.*

Plaintiff has not asserted any clear allegations that Commissioner Saul's unconstitutional tenure resulted in harm to her. The ALJ's decision here was based upon the factual record and the application of established law, which generally cannot be changed by the Commissioner. Plaintiff, like the other plaintiffs in the cited cases, has neither shown a nexus between the removal restrictions and her claim, nor plausibly alleged that the statutory tenure protection affected the ALJ's decision or caused her

harm. Therefore, the undersigned recommends that Plaintiff's Motion for Summary Judgment be denied on the constitutional claim.

## **RECOMMENDATION**

For the reasons set forth above, the undersigned hereby RECOMMENDS that Plaintiff's Motion for Summary Judgment ECF No. 15, be DENIED, and that Defendant's Motion for Summary Judgment, ECF No. 19, be GRANTED.

Within seven (7) days after being served with a copy of this Report and Recommendation, any party may serve and file written objections to any of the above findings and recommendations as provided by the Local Rules for this district. 28 U.S.C. § 636(b)(1); S.D. Fla. Mag. R. 4(b). Any response to any objections filed shall be due within seven days (7) of the objection. The parties are hereby notified that a failure to timely object waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions contained in this Report and Recommendation. 11th Cir. R. 3-1 (2016); *see Thomas v. Arn*, 474 U.S. 140 (1985).

DONE and SUBMITTED at Fort Lauderdale, Florida, this 12th day of August 2022.

_____
PATRICK M. HUNT
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
The Honorable Roy K. Altman
All Counsel of Record