UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 21-cv-61341-ALTMAN/REID

**VALERIE NACOLE HUNT**,

 *Plaintiff*,

v.

**KILOLO KIJAKAZI**,
*Acting Commissioner of Social Security Administration*,

 *Defendant.*

_____/

**ORDER**

 Our Plaintiff, Valerie Hunt, appeals the Social Security Administration's denial of her application for Social Security benefits. *See* Compl. [ECF No. 1]. The parties filed cross-motions for summary judgment—*see* Plaintiff's Motion for Summary Judgment ("Pl.'s MSJ") [ECF No. 15]; Defendant's Combined Motion for Summary Judgment and Response to Plaintiff's Motion for Summary Judgment ("Def.'s MSJ") [ECF No. 19]—which we referred to U.S. Magistrate Judge Patrick M. Hunt for a report and recommendation, *see* Order of Referral [ECF No. 14].

 In his Report & Recommendation (the "R&R") [ECF No. 23], Magistrate Judge Hunt[1] recommended that we deny Hunt's MSJ and grant the SSA's. *See* R&R at 1. In response, Hunt filed a set of two objections, *see* Objections ("Obj.") [ECF No. 24]—both of which we now reject. After careful review, in short, we **ADOPT** the R&R, **DENY** Hunt's MSJ, and **GRANT** the SSA's MSJ.

---

[1] The Plaintiff and the Magistrate Judge share the "Hunt" surname. When we refer to "Hunt," then, we're talking about the Plaintiff, Valerie Hunt. When we want to refer to the Magistrate Judge, we'll always use the formal title: "Magistrate Judge Hunt."

1

## BACKGROUND[2]

On February 11, 2019, Hunt sought supplemental security income, claiming that she's been disabled since June 19, 2015. *See* ALJ Decision at 1 [ECF No. 13]. After her application was twice denied—first on July 5, 2019, and then again on November 7, 2019—Hunt appeared at a hearing before an Administrative Law Judge. *Ibid.* The ALJ concluded that "the claimant is not disabled under sections 216(i) and 223(d) of the Social Security Act." *Id.* at 20. When the SSA Appeals Council declined to reconsider the ALJ Decision, *see* R. at 9, Hunt appealed that decision to us. *See generally* Compl.

In her final decision, which we review here, the ALJ applied the SSA's familiar five-step inquiry.[3] *See generally* ALJ Decision.[4] At Steps One and Two, the ALJ determined that Hunt hasn't engaged in substantial gainful activity since June 19, 2015, and that she suffers from "severe impairments . . . [which] significantly limit the ability to perform basic work activities." *Id.* at 4–5. At

---

[2] These facts are taken from the certified administrative record. *See* Social Security Transcript ("R.") [ECF No. 13]. The ALJ Decision can be found at R. at 23–43. Since we cite it so often, though, we'll paginate it separately—*i.e.*, we'll refer to the first page of the ALJ Decision as ALJ Decision at 1, rather than R. at 23.

[3] That inquiry helps the ALJ determine whether a claimant is disabled by reference to the following five questions:

> (1) [W]hether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a residual functioning capacity ("RFC") assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's RFC, age, education, and work experience.

*Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citing 20 C.F.R. § 404.1520(a)(4)(i)–(v); and then 20 C.F.R. § 416.920(a)(4)(i)–(v)).

[4] We note at the outset that the ALJ Decision comes full of typos, missing words, and other grammatical and syntactical errors.

2

Step Three, the ALJ found that "[t]he claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments." *Id.* at 5. In arriving at this conclusion, the ALJ *both* considered Hunt's physical and mental impairments, *id.* at 5–9, *and* determined that, despite these impairments, she can still perform the basic functions of daily living, *id.* at 8. Specifically, the ALJ noted:

> [The Plaintiff] said that she is capable of independently completing various self-care activities including cooking, cleaning, dressing, and bathing herself (as long as her pain symptoms are manageable). She had a valid driver's license and drove to the appointment. Furthermore, throughout the medical evidence of record, the claimant is generally described as alert, awake and well oriented[.]

*Ibid.*

At Step Four, the ALJ found that Hunt "has the residual functional capacity to lift and/or carry 20 pounds occasionally and 10 pounds frequently, stand and/or walk 6 hours total in an 8-hour workday, sit 6 hours total in an 8-hour workday, frequently reach, handle, finger, and feel with the bilateral upper extremities[.]" *Id.* at 9. "She is able," the ALJ continued, "to occasionally interact with the public, co-workers, and supervisors, able to concentrate and persist for simple, routine tasks for two hour segments without fast paced, high production demands, and able to adapt to gradual or infrequent changes in the work setting." *Id.* at 9–10; *see also id.* at 11 ("[T]he claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision."). The ALJ based this conclusion on a thorough review of Hunt's medical history—both physical and mental. *Id.* at 10–18.

With respect to Hunt's *physical* impairments, the ALJ found, among other things, that (1) "she has reported no more than mild limitations in her activities of daily living . . . [and] her symptoms have

3

been moderate in severity," *id.* at 17; (2) "she has received [ ] medication and reported good results," *ibid.*; and (3) "her symptoms have been stable on adherence to treatment," *id.* at 18. In short, the ALJ concluded: "The fact that working may cause [Hunt] pain or discomfort does not mandate a finding of disability," because "her symptoms are [not] so severe as to keep her from working." *Id.* at 17.

The ALJ similarly found that, "although the claimant's mental impairments were severe," she could still participate in the workforce. *Id.* at 11. Here, the ALJ acknowledged that Hunt suffers from "unspecified depressive disorder with secondary anxiety." *Id.* at 10. Still, she concluded that, while "[t]he claimant generally complained of lacking executive functioning[, n]onetheless, the mental status examinations were generally unremarkable." *Id.* at 16. In saying so, the ALJ noted the progress Hunt had shown—and the increased functionality she had displayed—throughout her psychological treatment (between 2016 and 2019). *Id.* at 14–16. In this respect, the ALJ explained that, in the various notes she reviewed from *different* mental-health professionals, Hunt "denied suicidal ideation," described herself as "not nervous or anxious," and "found some relief [from certain unspecified medications.]" *Id.* at 15. And Hunt's providers noticed this improvement too. For example, the ALJ cited one psychological caregiver, Dr. Jalazo, who observed that "her mood and affect . . . broadened over time (to include instances of appropriate smiling and laughter)." *Ibid.* The medical providers at Henderson Behavioral Health similarly noticed that Hunt "was alert, calm[,] cooperative, engaged, oriented, intelligent/bright and focused despite some observations of anxiety." *Id.* at 16.

Still in Step Four, the ALJ considered the opinions of the SSA's medical experts. *Id.* at 11–12. And she specifically found the opinions of Drs. Wiese[5] and Krishnamurthi persuasive. Dr. Wiese's views, she said, were "consistent with the overall medical evidence of record and the mostly

---

[5] The ALJ sometimes referred (erroneously) to Dr. Wiese as "Dr. Weiss." *See, e.g.*, ALJ Decision at 11, 18.

4

unremarkable mental status examinations of the claimant." *Id.* at 11. And, she added, "the medical evidence of record [ ] well supports [Dr. Krishnamurthi's] opinion[.]" *Id.* at 12. By contrast, she found the opinion of Dr. Savage (also an impartial medical expert) "not fully persuasive" because, while he "opined that the claimant was limited to work at a sedentary level of exertion, the undersigned finds that the claimant is slightly less limited[.] As summarized herein, the overall medical evidence of record generally shows that the claimant's gait was normal and she had 5/5 motor strength." *Id.* at 12.

> The ALJ summarized the medical record this way:
>
> Overall, the medical evidence of record contains treatment notes by various sources. For instance, treatment no[t]es by Memorial Healthcare Systems dated May 10, 2016 through at least January 14, 2021 show that the claimant sought treatment for complaints of bilateral foot pain and mixed connective tissue disease. . . . Further, she was informed that in case of limiting lower extremity joint pain, she could do low impact exercises including cycling, elliptical machine or pool exercises. She was followed by a rheumatologist who prescribed treatment with Methotrexate injections weekly, as well as Plaquenil, CellCept and Prednisone. . . . X-rays of her lumbar spine have been generally unremarkable. They revealed no acute fracture or spondylolisthesis.

*Id.* at 13 (cleaned up).

The ALJ also delved into the opinions of several *other* doctors, including Matthew Jalazo and Lori Ben-Ezra (both consultative examiners). Dr. Jalazo, a psychologist, found that Hunt's "symptoms have been stable on adherence to treatment," *id.* at 16, and noted that they "displayed adequate persistence, as she sustained her effort on formal mental status questioning and did not appear to give up prematurely," *id.* at 15. While Dr. Jalazo "offered a diagnosis of unspecified anxiety disorder and unspecified depressive disorder," *ibid.*, his conclusion was "of a good prognosis," which the ALJ found "persuasive," *id.* at 16 (citing R. at 627 (Dr. Jalazo's opinion)). In her mental-health evaluation, Dr. Ben-Ezra "offered a diagnosis of major depressive disorder, with anxious distress," but concluded that Hunt "should be able to behave in a predictable manner and implement appropriate social

5

judgment[.]" *Ibid.* (citing R. at 1552–53 (Dr. Ben Ezra's opinion)). And (she added): "[Al]though depression and anxiety may interfere at times[,] [Hunt] should be able to engage in appropriate relationships with coworkers, supervisors and customers due to psychopathology." *Ibid.* (citing R. at 1552). The ALJ likewise found this opinion "persuasive because it is consistent with the medical evidence of record, which contains mostly generally unremarkable mental status examinations," and because Dr. Ben-Ezra "offered it in an area of her expertise." *Ibid.* "[I]n an abundance of caution," however, the ALJ decided to spurn Dr. Ben-Ezra's observation that Hunt can "engage in appropriate relationships," *ibid.* (citing R. at 1552), in favor of "the opinion by Dr. Weiss [sic] of a limitation to occasional interactions [which] is more suitable," *ibid.* (citing R. at 90 (Dr. Wiese's opinion)).

At Step Five, the ALJ concluded as follows: "Based on the testimony of the vocational expert . . . the claimant's age, education, work experience, and residual functional capacity, the claimant is capable of making a successful adjustment to other work that exists in significant numbers in the national economy. A finding of 'not disabled' is therefore appropriate under the framework of the above-cited rule." *Id.* at 20. According to the ALJ, then, "[t]he claimant has not been under a disability, as defined in the Social Security Act, from June 19, 2015, through the date of this decision (20 CFR 404.1520(g) and 416.920(g))." *Ibid.* (errors in original & emphasis omitted).

## STANDARD OF REVIEW

The Court's review of an ALJ's decision is "limited to an inquiry into whether there is substantial evidence to support the findings of the [ALJ], and whether the correct legal standards were applied." *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). This determination—whether the ALJ applied the correct legal standard—is a legal one subject to *de novo* review. *Graham v. Bowen*, 90 F.2d 1572, 1575 (11th Cir. 1986) (citation omitted). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."

6

*Lewis v. Callahan*, 12 F.3d 1436, 1439 (11th Cir. 1997). The Court may not, however, "reweigh the evidence, or substitute [its] judgment" for the ALJ's—even if the "evidence preponderates against the [ALJ's] decision." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983) (citation omitted).

When a party objects to a report and recommendation, "[t]he district judge must determine *de novo* any part of the magistrate judge's disposition that has been properly objected to." FED. R. CIV. P. 72(b)(3). "A general objection, or one that merely restates the arguments previously presented[,] is not sufficient to alert the court to alleged errors on the part of the magistrate judge. An objection that does *nothing more than state a disagreement* with a magistrate's suggested resolution, or *simply summarizes what has been presented before*, is not an 'objection' as that term is used in this context." *VanDiver v. Martin*, 304 F. Supp. 2d 934, 937–38 (E.D. Mich. 2004) (emphasis in original); *cf. Thomas v. Arn*, 474 U.S. 140, 150 (1985) ("It does not appear that Congress intended to require district court review of a magistrate [judge]'s factual or legal conclusions, under a de novo or any other standard, when neither party objects to those findings."). "Objections to a magistrate judge's recommendation and report must be specific and clear enough to permit the district court to effectively review the magistrate judge's ruling." *Knezevich v. Ptomey*, 761 F. App'x 904, 906 (11th Cir. 2019) (cleaned up).

## THE R&R

In her MSJ, Hunt argued that: "(1) the ALJ failed to . . . properly assess the combined effect of the impairments on the Plaintiff's RFC, and in particular, the impact of the fatigue on her ability to work," Pl.'s MSJ at 9; and "(2) the ALJ's decision was unsupported by substantial evidence because she failed . . . to include limitations identified by Dr. Ben-Ezra in the RFC and hypothetical question to the VE," *id.* at 14;[6] *see also* R&R at 4 ("First, Plaintiff argues that the ALJ failed to properly consider

---

[6] Hunt advanced a third argument in her MSJ: that "the ALJ and the Appeals Council did not have constitutional authority to decide the present case." Pl.'s MSJ at 16. The Magistrate Judge rejected this

the combined effect of the impairments on Plaintiff's RFC[, and] alleges that the ALJ found Plaintiff's obesity and sleep apnea to be severe impairments but failed to identify the limitations due to these impairments. . . . Second, Plaintiff argues that the ALJ's decision was unsupported by substantial evidence because she failed to pose a complete hypothetical question to the vocational expert ('VE') and failed to include limitations suggest[ed] by Dr. Ben-Ezra, the consultative examiner, in determining Plaintiff's RFC."). Magistrate Judge Hunt found neither argument persuasive and recommended that Hunt's MSJ be denied. R&R at 8–9, 14.

*First*, the Magistrate Judge determined that the ALJ's "findings as to Plaintiff's fatigue . . . are supported by substantial evidence." *Id.* at 9. Here, he noted that the ALJ's review of Hunt's medical history was comprehensive and consistent with the record evidence. *See id.* at 5–9. *Second*, the Magistrate Judge "disagree[d]" with Hunt's contention "that the ALJ's decision is not supported by substantial evidence because the ALJ failed to resolve the apparent conflict between Dr. Ben-Ezra's opinion . . . and the [ ] jobs the VE stated that Plaintiff could perform." *Id.* at 13. According to the Magistrate Judge, the ALJ, "in accordance with the Eleventh Circuit's decisions[,] . . . did not have an affirmative duty to resolve the alleged conflict between the VE's testimony and DOT's definition for reasoning level two jobs." *Id.* at 14. "Therefore," the Magistrate Judge found "that the ALJ's decision [wa]s supported by substantial evidence." *Ibid.*

## HUNT'S OBJECTIONS

Hunt now offers two objections to the R&R. *First*, she argues:

---

argument in the R&R. *See generally* R&R at 14–18. And Hunt elected not to reraise this contention here. *See generally* Objections. We thus review this part of the R&R only for clear error. *See Kohser v. Protective Life Corp.*, 649 F. App'x 774, 777 (11th Cir. 2016) ("[W]here a litigant fails to offer specific objections to a magistrate judge's factual findings, there is no requirement of de novo review." (citing 28 U.S.C. § 636(b))).

8

> The ALJ failed to properly consider the Plaintiff's obesity and sleep apnea which are severe impairments. As per Dr. Savage, pain and fatigue limits the Plaintiff to sedentary work. The ALJ improperly failed to recognize and address Dr. Savage's reasons for limiting the Plaintiff to sedentary work.

Obj. at 1 (emphasis omitted). As to this objection, Hunt says that "one of the most significant symptoms [she] experiences . . . is her fatigue." *Id.* at 2. As she sees it, "[t]he Plaintiff's sleep apnea and obesity result in severe daytime sleepiness, fatigue, sleeping 14–20 hours per day, naps during the day, sleeping 'through cooking dinner', resting while emptying the dishwasher, inability to go grocery shopping, cancelling plans, and other problems." *Ibid.* The ALJ, Hunt continues, agreed that her "obesity and sleep apnea [are] severe[.]" Obj. at 1. And (Hunt adds) the ALJ's finding that she has a "severe impairment"—ALJ Decision at 4—"is a significant finding because, by definition, severe impairments are those that significantly limit basic work activities," Obj. at 1; *see also ibid.* ("An impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities." (citing 20 C.F.R. §§ 404.1522(a), 416.922(a))). The ALJ (Hunt maintains) thus contradicted herself: On the one hand, she found that Hunt suffers from a condition that, by statutory definition, limits basic work activity; on the other, she ruled that Hunt can perform "light work." *Id.* at 2 (citing ALJ Decision at 9).

How (Hunt wonders) could the ALJ justify this inconsistency? Because, Hunt posits, the ALJ "failed to properly" weigh the evidence. *Id.* at 3. And, she concludes, the Magistrate Judge, "like the ALJ, fails to recognize" the significance of Hunt's fatigue "and instead attempts to discredit the Plaintiff's allegations based on the lack of objective evidence." *Id.* at 2. Hunt's point here seems to be that "[t]he ALJ ignored Dr. Savage's explanation[.]" *Id.* at 3; *see also ibid.* (insisting that it's "as if the ALJ did not read or could not read Dr. Savage's explanation"); *ibid.* ("[T]he ALJ did not properly consider Dr. Savage's opinion which supported the Plaintiff's allegations of pain and fatigue."); *ibid.* ("The ALJ failed to properly review Dr. Savage's opinion.").

9

*Second*, Hunt objects that "the ALJ failed to properly consider the opinion of Dr. Ben-Ezra which resulted in an incomplete hypothetical question to the VE." *Id.* at 4 (emphasis omitted). Here, she contends that the Magistrate Judge didn't notice the contradictions in the ALJ's treatment of Dr. Ben-Ezra's opinion, which in turn influenced the VE's recommendation. *Id.* at 5. The ALJ found Dr. Ben-Ezra's opinion—"that the Plaintiff may experience difficulty learning and recalling directions for complicated and detailed tasks"—"persuasive and consistent," but still concluded (in the RFC assessment) that there isn't "any limitation on the ability to perform detailed tasks." *Id.* at 4. To Hunt, this supposed incongruity indicates that "[t]he ALJ [ ] ignore[d] evidence that contradicts her decision." *Ibid.* Hunt then identifies "two flaws in [the Magistrate Judge's] conclusion and each one of them is independent grounds for a remand." *Id.* at 5 (citing R&R at 13–14).

The first flaw is that the Magistrate Judge missed "the ALJ's failure to consider whether a limitation on detailed tasks should be included in the hypothetical question to the VE." *Ibid.* "Because the ALJ relied on the VE testimony at step five and because the ALJ failed to pose a complete hypothetical question," she says, "the ALJ's decision was unsupported by substantial evidence." *Id.* at 6. Because—in Hunt's opinion—the ALJ "ignored the part of Dr. Ben Ezra's opinion stating that the Plaintiff may experience difficulty with complicated and detailed tasks," *id.* at 4, the VE was forced to rely on "an incomplete hypothetical question," *ibid.*

The second (supposed) flaw appears in two of the jobs the VE said Hunt could perform—routing clerk and office helper—which "have a Reasoning level of 2." *Id.* at 6. Hunt argues that a "[r]easoning level of 2" requires "the ability to perform detailed tasks[.]" *Ibid.* But (Hunt continues) Dr. Ben-Ezra testified "that Plaintiff would have difficulty with complicated, detailed tasks." *Id.* at 4 (cleaned up). If you remove routing clerk and office helper from the panoply of available jobs (Hunt says), only the "job of housekeeper" would remain. *Id.* at 6. And (Hunt maintains), whether the

10

estimated 221,000 available housekeeping roles are abundant enough to "exist in significant numbers in the national economy," ALJ Decision at 19 (citing 20 C.F.R. § 416.969(a)), "has not been addressed and warrants a remand," Obj. at 6. "Consequently," Hunt concludes, "the ALJ's failure to consider whether the Plaintiff could perform detailed tasks as suggested by Dr. Ben-Ezra's opinion led to a decision unsupported by substantial evidence." *Id.* at 6–7.

## ANALYSIS

### I. The First Objection

In her First Objection, Hunt challenges (1) the Magistrate Judge's failure to see the ALJ's "contradictory" analysis; (2) the Magistrate Judge's (and the ALJ's) assessment of Dr. Savage's opinion; and (3) the ALJ's calculation of the RFC. *See id.* at 1. We now consider (and ultimately reject) each of these three aspects of the First Objection because (1) the ALJ's reasoning was *not* contradictory; (2) the ALJ properly evaluated Dr. Savage's opinion; and (3) the ALJ gave sufficient weight to Hunt's fatigue.

#### A. Part I

In the first part of her First Objection, Hunt says: "The ALJ's [finding that] obesity and sleep apnea [are] severe," *ibid.*, "conflict[s] with the ALJ's limitation of the Plaintiff to light work," *id.* at 2. The ALJ (it's true) *did* find that Hunt suffers from a "combination of severe impairments[.]" ALJ Decision at 4. And Hunt's right that, "by definition, severe impairments . . . significantly limit basic work activities." Obj. at 1; *see also* § 416.922. But—and here's where Hunt runs aground—a person with a limitation on basic work activities *can* still work. *See Brunson v. Comm'r of Soc. Sec.*, 704 F. App'x 56, 58 (3d Cir. 2017) (upholding ALJ's finding that, "although Brunson *suffered from severe impairments that precluded his ability to return to his previous work, he retained the ability to engage in other work* in the national economy, making him not disabled for purposes of the Social Security Act" (emphasis

11

added)). Indeed, the Sixth Circuit has specifically rejected a plaintiff's "contention [ ] that the ALJ's analysis was internally inconsistent because he classified Griffeth's impairment as 'severe' but treated it as 'non-severe'" by concluding, "[l]ater in his analysis," that "Griffeth's depression had only a minimal effect on his ability to concentrate." *Griffeth v. Comm'r of Soc. Sec.*, 217 F. App'x 425, 427–28 (6th Cir. 2007). The problem with the plaintiff's argument, the Sixth Circuit observed, was that he'd over-emphasized the ALJ's finding of a "severe" and "significant" limitation at Step Two:

> At step two "significant" is liberally construed in favor of the claimant. The regulations provide that if the claimant's degree of limitation is none or mild, the Commissioner will generally conclude the impairment is not severe, "unless the evidence otherwise indicates that there is more than a minimal limitation in your ability to do basic work activities." 20 C.F.R. § 404.1520a(d). The purpose of the second step of the sequential analysis is to enable the Commissioner to screen out "totally groundless claims." We have construed the step two severity regulation as a "*de minimis* hurdle" in the disability determination process. Under a Social Security policy ruling, if an impairment has "more than a minimal effect" on the claimant's ability to do basic work activities, the ALJ is required to treat it as "severe." SSR 96–3p (July 2, 1996).

*Ibid.* (cleaned up). Notably, the Sixth Circuit isn't alone in treating the Step 2 analysis this way. *See, e.g.*, *Burkstrand v. Astrue*, 346 F. App'x 177, 180 (9th Cir. 2009) ("To the extent Burkstrand suggests that a finding of severe impairment at Step 2 necessarily requires limitations on a claimant's ability to perform basic work activities, this argument has no merit.").

And this makes sense: If Hunt were right—if a finding of "severe impairment" at Step Two *always* resulted in a "disabled" classification—then there'd be no point in ever proceeding to Steps Three, Four, and Five. But the law is clear that our analysis must progress to those additional steps. As the Supreme Court has explained: Even "[i]f the impairment is severe [at Step Two], the evaluation proceeds to the Third Step, which determines whether the impairment is equivalent to one of a number of listed impairments that the Secretary acknowledges are so severe as to preclude substantial gainful activity." *Bowen v. Yuckert*, 482 U.S. 137, 141 (1987). Like a legal claim that survives a motion

12

to dismiss but cannot withstand summary judgment, there's nothing incongruous about the ALJ's finding that, while Hunt's limitations meet the minimal requirements for severity at Step Two, they fail to show that she's "disabled" at Step 5. We, therefore, **OVERRULE** the first part of Hunt's First Objection.

### B. Part II

In the second part of her First Objection, Hunt contends that "[t]he ALJ ignored Dr. Savage's explanation," Obj. at 3, and that the Magistrate Judge did too, *id.* at 2. This argument is frivolous. In the R&R, the Magistrate Judge spent about half a page recounting Dr. Savage's opinion, R&R at 5–6, and another half analyzing it, *id.* at 8–9—addressing (and rejecting) many of the same details Hunt now says he ignored, *see* Obj. at 2. Here's what the R&R had to say about Dr. Savage's position:

> Further, Plaintiff mischaracterizes the ALJ's consideration of Dr. Savage's opinion. Dr. Savage opined that Plaintiff could lift and carry up to 10 pounds frequently; could sit for seven hours at one time and stand or walk for three hours at a time; experienced morning fatigue; and would benefit from sedentary work level because of the "variations Plaintiff experiences due to myalgia, etc." Dr. Savage found that Plaintiff did not have any impairments that met any of the listings. The ALJ included Dr. Savage's opinion but found Plaintiff to be slightly less limited than Dr. Savage opined. Nevertheless, a majority of Dr. Savage's opinion comports with the findings in the ALJ's RFC assessment. The undersigned finds that the ALJ's consideration of Plaintiff's obesity satisfies the requirements of SSR 19-2p and her findings as to Plaintiff's fatigue caused by obesity, sleep apnea, and lupus are supported by substantial evidence.

R&R at 8–9.

And, for what it's worth, the ALJ didn't ignore Dr. Savage either. She, to the contrary, penned a full-page treatment of Dr. Savage's opinion. *See* ALJ Decision at 11–12. Here's the most pertinent part of that analysis:

> Based on his review of the medical evidence of record, Dr. Savage opined that the claimant had the ability to lift and or carry up to 10 pound[s] frequently and 15 pounds occasionally. She could sit for seven hours at one time. She could stand and/or walk for three hours at a time for each activity. . . . Although he indicated the claimant [ ]

13

> was limited to moderate noise levels, the record show[s] no indication of an indication of an impairment that would result in a noise impairment. Dr. Savage noted that the claimant experienced morning fatigue and he opined she would benefit [from] a sedentary work level because of the variations she experiences due to myalgia, etc. The undersigned finds that the claimant is slightly less limited than opined by Dr. Savage. As noted herein, the overall medical evidence of record generally shows that the claimant's gait was normal and she had 5/5 motor strength.

*Id.* at 12 (cleaned up). Hunt may disagree with these conclusions—but she cannot fairly say that the ALJ (or the R&R) "ignored" Dr. Savage's opinions. We thus **OVERRULE** the second part of the First Objection.

### C. Part III

In the third part of her First Objection, Hunt claims that the ALJ "failed to properly articulate how [obesity and sleep apnea] impact the Plaintiff's RFC when the evidence in the record indicates these impairments caused the Plaintiff significant fatigue." Obj. at 3; *see also ibid.* ("[E]ven though Dr. Savage cited entirely subjective causes for limiting the Plaintiff to sedentary work . . . the ALJ attempted to reject them based on the evidence of normal objective examinations."); *id.* at 4 ("The ALJ cited objective examinations even though Dr. Savage stated that the reason for reducing the Plaintiff to sedentary work was pain and fatigue."). And she launches the same criticism at Magistrate Judge Hunt's treatment of this aspect of the ALJ Decision. *See id.* at 2 ("Judge Hunt, like the ALJ, points to unremarkable examinations, to support his conclusion that the ALJ did not err in considering sleep apnea and obesity. In doing so, Judge Hunt, like the ALJ, fails to recognize that one of the most significant symptoms the Plaintiff experiences due to obesity and sleep apnea is her fatigue, and instead attempts to discredit the Plaintiff's allegations based on the lack of objective evidence."). In essence, Hunt believes that the Magistrate Judge (and the ALJ) should've weighed Hunt's own testimony and Dr. Savage's opinion *more* heavily than the opinions of Drs. Wiese, Krishnamurthi, Greenberg, Lam, Jalazo, Ben-Ezra, Izuegbu, Smith, and the professionals who examined Hunt at Henderson Behavioral

14

Health, Memorial Healthcare Systems, South Florida Rheumatology, and Memorial Integrated Healthcare.

But we agree with the Magistrate Judge that the record amply supports the ALJ's weighing of the evidence. As the Magistrate Judge explained:

> The undersigned has reviewed the record and finds that the ALJ properly considered Plaintiff's fatigue caused by obesity, sleep apnea, and lupus. At step three, the ALJ determined that Plaintiff had a combination of severe impairments including obesity, sleep apnea, and lupus. However, the ALJ found that the impairments considered singly or in combination did not cause Plaintiff more than a mild limitation in her activities of daily living and were therefore considered as non-severe. Further, the ALJ noted that Plaintiff's examination by her primary healthcare provider showed generally unremarkable examinations including cardiovascular findings. As to obesity, the ALJ found that Plaintiff's orthopedic impairments, compounded by obesity, might cause more limitation and could preclude the performance of more than light physical exertion. However, the ALJ concluded that nothing in the record, including the orthopedic impairments compounded by significant obesity, would limit her to less than light physical exertion.

R&R at 8.

And Hunt gives us no good reason to disagree with this assessment. She, in fact, begins by conceding that Dr. Savage *wasn't* actually "ignored[.]" Obj. at 3 (acknowledging that the ALJ (and the Magistrate Judge) analyzed Dr. Savage's testimony). With that out of the way, she proceeds to blame the ALJ for "reject[ing]" what she admits are "entirely subjective causes for limiting the Plaintiff to sedentary work" in favor of "evidence of normal objective examinations[.]" *Id.* at 3. But the ALJ was fully within her discretion to credit the objective over the subjective evidence—just as she was well within her authority to believe the half-a-dozen or more medical examinations over Dr. Savage's—so long as she explained her reasons. And explain she did.

*First*, she noted that the "overall medical evidence of record"—*i.e.*, all those doctors' opinions and medical examinations we recited above—"generally shows that the claimant [is] . . . less limited than opined by Dr. Savage." ALJ Decision at 12. Specifically, although Hunt was diagnosed with

15

obesity, she "was encouraged on regular exercise with walking or running for 30 minutes a day five days a week." *Id.* at 13. And, "[r]egarding sleep apnea, the record shows that the claimant was evaluated and diagnosed by Memorial Integrated Healthcare . . . . [T]he physical and mental status examinations by this source were also generally unremarkable with no impaired range of motion." ALJ Decision at 14 (cleaned up).

*Second*, the ALJ discussed her (legitimate) concerns about Dr. Savage's credibility: "At the May 21, 2020 hearing," she wrote, "Dr. Savage testified that he did not have all the updated records and therefore, an interrogatory would be submitted with his opinion." *Id.* at 11. "However," she pivoted, "in response to a question by the claimant's attorney, [Dr. Savage] testified that the treatment for the claimant's immune system disorder was harsh and could cause weight gain." *Ibid.* Two months later, Dr. Savage responded to the SSA's "medical interrogatory" with a more comprehensive opinion— though, here again, he failed to cite *any* sources. *Id.* at 11; *see also generally* R. at 2164–2172 (Dr. Savage's interrogatory response). Instead, he just checked the "yes" box to two of the questions the medical interrogatory posed: (1) "Have you reviewed the evidence we furnished to you?" R. at 2164; and (2) "Is there sufficient objective medical and other evidence to allow you to form opinions about the nature and severity of the claimant's impairment(s). . . . If not, what additional evidence do you believe is required?" *Ibid.* Worse, when the medical interrogatory specifically asked him to "[c]ite the objective medical findings that support your opinion, with specific references (exhibit or page number) to the evidence we provided from the case record," Dr. Savage gave us nothing. *Ibid.* When it comes to Dr. Savage, in short, we cannot disagree with the ALJ's well-founded credibility concerns.

Which brings us to Hunt's own testimony. Again, the ALJ specifically explained why she found Hunt's own "statements concerning the intensity, persistence and limiting effects of these symptoms

[to be] not entirely consistent with the medical evidence and other evidence in the record." ALJ Decision at 11. The ALJ wrote:

> As for the claimant's statements about the intensity, persistence, and limiting effects of her symptoms, they are inconsistent because although the claimant has been diagnosed with [several conditions], the undersigned finds that these impairments considered singly or in combination do not cause the claimant more than moderate functional limitations in her ability to perform physical or mental work related activities. . . . Further, physical examinations have been generally unremarkable throughout. . . . Furthermore, the neurological examinations were normal. . . . The psychological consultative examinations showed generally unremarkable mental status examinations. The treatment notes throughout, including the treatment notes by Henderson generally show that [Hunt] was alert, calm[,] cooperative, engaged, oriented, intelligent/bright[,] and focused despite some observations of anxiety. In addition, the claimant has the ability to pay bills, count change, handle a savings account and use a checkbook/money orders. She drives and she goes shopping in stores and by computer. Further, she can prepare a simple breakfast and lunch for her mother. She performs self-care independently, such as bathing, dressing and feeding herself and she is able to clean her own laundry. . . .
>
> [D]espite the claimant's pain, she has reported no more than mild limitations in her activities of daily living, as noted above. In addition, the medical records reflect[ ] that her symptoms have been moderate in severity and she has received [ ] medication and reported good results. Further, the claimant is able to walk independently, without an assistive device.

*Id.* at 17 (cleaned up). Even Hunt, in other words, "reported no more than mild limitations in her activities of daily living." *ibid.* And that's probably why, as the Magistrate Judge observed, "a majority of Dr. Savage's opinion comports with the findings in the ALJ's RFC assessment." R&R at 8.

Again, Hunt may disagree with this conclusion—but she cannot legitimately claim that the ALJ (or the Magistrate Judge) "failed" to consider the evidence. Obj. at 3. And we aren't free to "decide the facts anew, reweigh the evidence, or substitute our judgment" for the ALJ's. *Bloodsworth*, 703 F.2d at 1239. The ALJ, in short, reviewed the opinions of the medical experts, compared those opinions to the record evidence (some of it from Hunt's own words), and concluded that those opinions were reasonable and well supported. That's precisely how an ALJ should be reviewing these cases.

17

As this recitation should make plain, substantial record evidence supports the ALJ's weighing of the evidence. We thus **OVERRULE** the third part of Hunt's First Objection.

\*\*\*

For all these reasons, then, we **OVERRULE** the First Objection.

### The Second Objection

In her second Objection, Hunt notes that two of the (three) available jobs the VE identified—routing clerk and office helper—"have a Reasoning level of 2," which requires "the ability to perform detailed tasks." Obj. at 6. But, as Hunt points out, Dr. Ben-Ezra testified "that Plaintiff would have difficulty with 'complicated, detailed tasks,'" *id.* at 4 (quoting R. at 1552 (Dr. Ben-Ezra's testimony))—a difficulty (Hunt claims) that would "preclude jobs with [a] reasoning level of two," *id.* at 6. To get a true sense of her reasoning level, then—and the job options that are *really* available to her—Hunt urges us to remand the case to the ALJ with instructions to incorporate Dr. Ben-Ezra's findings into the RFC. *See ibid.*

But this Objection fails because, as the Magistrate Judge explained, "there is no apparent conflict" between Dr. Ben-Ezra's testimony ("simple . . . tasks") and the RFC conclusion ("detailed tasks"). R&R at 14; *see also id.* at 9 ("[T]here is no inconsistency between jobs involving simple instructions and reasoning level two jobs[.]"). For this proposition, the Magistrate Judge relied on the Eleventh Circuit's decision in *Buckwalter v. Acting Comm'r of Soc. Sec.*, 5 F.4th 1320 (11th Cir. 2021). *See* R&R at 12–13. In that case, our Circuit "resolve[d] in a published decision whether there is an apparent conflict between one's limitation to following simple instructions and positions that require the ability to follow 'detailed but uninvolved' instructions." *Buckwalter*, 5 F.4th at 1320. The court "h[e]ld that there is no apparent conflict" between simple and detailed instructions because "[t]he primary difference between levels one and two is the length of the instructions—not the complexity." *Id.* at

18

1323. That is, "[w]hile level one specifies that the instructions must be simple, level two similarly specifies that they must be uninvolved . . . and 'uninvolved' also denotes a lack of complexity." *Ibid.* (cleaned up).

> As the Magistrate Judge observed, our case "is . . . akin to *Buckwalter*[.]" R&R at 12:
>
> [A] position with a reasoning level of two requires the ability to carry out detailed but uninvolved instructions. The Eleventh Circuit has stated that the primary difference between levels one and two is the length of the instructions, not the complexity. . . . The [Magistrate Judge therefore] finds that Dr. Ben- Ezra's opinion conforms to this language because the doctor opined that Plaintiff would have difficulty with '*complicated*, detailed tasks.' Again, level two reasoning requires the ability to perform uninvolved tasks, which not only comports with the VE's testimony but also Dr. Ben-Ezra's opinion.

*Id.* at 13 (cleaned up). There's thus no contradiction between the Dr. Ben-Ezra's opinion and the ALJ's RFC. That pretty much does away with the Second Objection.

One final point. It doesn't *really* make sense for Hunt to advocate for Dr. Ben-Ezra's opinion *over* Dr. Wiese's. Dr. Ben-Ezra's opinion, after all, was far *less* accommodating to Hunt's position—precisely because Ben-Ezra opined that "the claimant *should* be able to behave in a predictable manner and implement appropriate social judgment" and that "she *should* be able to engage in appropriate relationships with coworkers, supervisors and customers." ALJ Decision at 16 (emphasis added) (quoting R. at 1552 (Dr. Ben-Ezra's testimony)). In Dr. Ben-Ezra's view, Hunt's depression and anxiety would "interfere" with regular activities only "at times." *Ibid.* (quoting R. at 1552 (Dr. Ben-Ezra's testimony)). Dr. Wiese, by contrast, found Hunt *less* capable of normal employment and "limited" her "to *occasional* interactions." *Ibid.* (emphasis added) (quoting R. at 90 (Dr. Wiese's testimony)). In other words, while the ALJ found both opinions persuasive, *id.* at 18, she adopted Dr. Wiese's "in an abundance of caution," *id.* at 16, because his views were *more* favorable to Hunt—in other words, as a way of giving Hunt the benefit of the doubt, *see ibid.* (finding Dr. Wiese's opinion

19

"more suitable" because of its relative *leniency* towards Hunt). If the RFC, deploying Dr. Wiese's opinion, produced a reasoning level of two, then, it would've come in at least that high (and possibly higher) by adopting Dr. Ben-Ezra's view.

The Second Objection, in short, is **OVERRULED**.

\* \* \*

Because the R&R hasn't left us "with a definite and firm conviction that a mistake has been committed," *Krys v. Lufthansa German Airlines*, 119 F.3d 1515, 1523 (11th Cir. 1997), Hunt's Objections are **OVERRULED**.

After careful review, therefore, we **ORDER AND ADJUDGE** as follows:

1. The Report and Recommendation [ECF No. 23] is **ACCEPTED and ADOPTED**.

2. The Plaintiff's Motion for Summary Judgment [ECF No. 15] is **DENIED**.

3. The Defendant's Motion for Summary Judgment [ECF No. 19] is **GRANTED**.

4. Pursuant to Federal Rule of Civil Procedure 58, final judgment will be entered separately.

5. The Clerk of Court shall **CLOSE** this case. All other pending motions are **DENIED as moot**. And all other deadlines are **TERMINATED**.

**DONE AND ORDERED** in the Southern District of Florida, this 12th day of September 2022.

_____
**ROY K. ALTMAN**
**UNITED STATES DISTRICT JUDGE**

cc:   counsel of record